

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-22-00376-CV
No. 07-22-00377-CV

**IN THE INTEREST OF D.M., A CHILD**
**IN THE INTEREST OF A.M.T., A CHILD**

On Appeal from the 320th District Court
Potter County, Texas
Trial Court Nos. 95,790-D-FM, 95,630-D-FM, Honorable Carry Baker, Presiding

June 7, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

In these accelerated appeals, Appellants, Father and Mother, appeal the judgments of the trial court terminating their parental rights to D.M. and A.M.T.[1] The Appellee is the Texas Department of Family and Protective Services.

Father challenges the sufficiency of the evidence to support the trial court's findings under the predicate grounds and that termination is in the best interest of the

---

[1] To protect the privacy of the parties involved, we refer to the mother of the children as "Mother," the father of the children as "Father," and the children by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).

children.  Appointed counsel for Mother has filed an *Anders*[2] brief in support of a motion to withdraw and urges that the appeal is without merit.  We affirm the judgments of the trial court.

## Background

During final hearings,[3] testimony showed in May 2020 (while A.M.T. was two years old) the Department received a complaint of neglectful supervision due to domestic violence by Father against Mother.  Father was charged with and pled guilty to domestic violence by applying pressure to Mother's throat or neck and impeding her breathing or circulation.[4]  In September 2020, Family-Based Safety Services (FBSS) were initiated and A.M.T.'s parents agreed to complete individual counseling.  Under the FBSS service plan, Father and Mother were to have no contact with one another until both parents had successfully completed their individual counseling and domestic violence therapy.  In addition, Father agreed to attend a Batterer Intervention and Prevention Program and Mother agreed to attend a domestic violence support group.  Neither parent completed their services but were observed numerous times to remain together in violation of the FBSS service plan.

In the spring of 2021, the parents attended two family conferences with the Department to discuss their lack of progress under the plans and for reuniting the family.

---

[2] *See Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

[3] In 2022, final hearings were held July 21, October 20, and November 22.

[4] Father received two years' deferred adjudication community supervision with conditions that he successfully complete BIPP (Batterer Intervention and Prevention Program), remain drug-free, and refrain from any contact with Mother.

Father also admitted to using drugs, claiming he was depressed "with just a lot of stress going on."

The Department sought removal of A.M.T. in 2021 after the Department's service worker arrived for the next home visit and found that Father and Mother were together again.[5] The two parents were heard to be fighting inside the home. When the service worker announced her presence, Father attempted to hide while Mother denied knowing his whereabouts; he emerged after the Department employee said she had heard them arguing. When the service worker expressed concern that Father was in the home, he became angry, banging the wall with his fist. In June 2021, after determining that the parents had completed no steps to ensure A.M.T.'s continued safety, the Department removed the child from their care and custody.

In July 2021, six weeks after A.M.T.'s removal, Mother gave birth to D.M. Both Mother and newborn tested positive for methamphetamine. When the Department's investigator went to see Mother in her hospital room, he also found Father staying in the room. The parents indicated an understanding that Father was not supposed to be with Mother. Mother initially denied to the investigator that she had used drugs and tried to blame Father's drug use for causing the positive test result. However, Mother later admitted she had "relapsed" and taken drugs because of stress. The Department filed a petition to seek removal of D.M., citing the parents' drug use and continued presence together.

At final hearing, the assigned permanency case specialist testified that even after

---

[5] Mother was pregnant with D.M. at the time.

3

the children were removed from Mother and Father, neither parent satisfied the requirements of their service plans.  Mother moved her residence without notification, failed to complete individual counseling, failed to appear for numerous drug screens, and ceased visiting her children after the court conditioned further visitation on drug screen results.  Mother also failed to show a stable home environment or employment.

Before being incarcerated in January 2022,[6] Father did not appear for drug screens on numerous occasions and offered no explanation.  After he was release from incarceration in July 2022, Father submitted two negative urinalysis screens but refused to undergo required hair follicle screens.[7]  Father also failed to complete individual counseling, parenting classes, the Batterer Intervention and Prevention Program, and substance abuse programs.  Father also often failed to meet with the assigned permanency case specialist despite her many attempts to contact him.[8]

At final hearing, Father testified to offer many excuses for his failure to comply.  He said his "days of downfall is not—not having my wife and kids."  He blamed his failure to complete services because of transportation issues.  He testified he did not complete a drug program assessment because he "wasn't like really up to it, or with it."  Father admitted using drugs throughout Mother's pregnancy with D.M. and testified he had

---

[6] At the urging of his probation officer, Father surrendered to incarceration to enter an Intermediate Sanction Facility for drug treatment.  Once incarcerated, however, he did not enter the program and offered no explanation as to why.

[7] Per the service plan, the "failure to take [a] random drug test on the date requested [is] considered as a 'positive' to the Department."

[8] In a December 2021 meeting (the first for Father to attend since D.M.'s removal five months earlier), Father was described as being "very angry" over the children's removal and insisted he "didn't understand why [the Department] was asking him to do these things, because it was lies."

4

continued to use methamphetamine less than a week before the hearing.

In December 2022, the trial court signed an order terminating Mother's parental rights to A.M.T. and D.M. pursuant to the Family Code's predicate act sections 161.001(b)(1)(D), (E), (O), and (P). The court terminated Father's parental rights to the children pursuant to sections (E), (O), and (P). *See* TEX. FAM. CODE ANN. § 161.001(b)(1) (D), (E), (O), (P).

## Standard of Review

When reviewing the legal sufficiency of the evidence to support the trial court's findings, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that it was finding true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). We give appropriate deference to the factfinder's conclusions and the role of the trial court by "assum[ing] that the factfinder resolved disputed facts in favor of the finding if a reasonable factfinder could do so." *Id.* "A corollary to this requirement is that [we] should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* If, after conducting our legal sufficiency review of the record evidence, we determine that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude the evidence is legally insufficient. *Id.* at 344–45.

In reviewing the factual sufficiency, we give deference to the factfinder's findings, but we also consider the disputed or conflicting evidence. *Id.* at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited

in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266. In conducting a factual sufficiency review, we cannot substitute our judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).[9]

## Applicable Law

A parent's right to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982). Consequently, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2002). Recognizing that a parent may forfeit his or her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interests. *See id.*

In a case to terminate parental rights under section 161.001, the Department must establish, by clear and convincing evidence,[10] (1) the parent committed one or more of the enumerated acts or omissions justifying termination, and (2) termination of parental

---

[9] The appellate court cannot weigh witness credibility issues that depend on demeanor and appearance as the witnesses are not present. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005). Even when credibility issues are reflected in the written transcript, the appellate court must defer to the factfinder's determinations, if those terminations are not themselves unreasonable. *Id.*

[10] Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007; *In re J.F.C.*, 96 S.W.3d at 264.

rights is in the best interest of the child. § 161.001(b). "Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d at 362. *See In re J.F.-G*, 627 S.W.3d 304, 321 (Tex. 2021).

A parent's conduct before and after birth and removal may be considered when assessing the appropriateness of termination. *In re J.E.*, No. 07-12-00449-CV, 2013 Tex. App. LEXIS 1063, at *7 (Tex. App.—Amarillo Feb. 5, 2013, no pet.) (mem. op.). The same is true of conduct subjecting a child to a life of uncertainty and instability; it too endangers a child's physical and emotional well-being. *In re A.B.*, No. 04-21-00051-CV, 2021 Tex. App. LEXIS 5984, at *6–7 (Tex. App.—San Antonio July 28, 2021, no pet.) (mem. op.).

A finding that a parent engaged in conduct supporting termination under predicate grounds (D) or (E) potentially affects the parent's relationships with other children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(m) (authorizing courts to terminate the parent-child relationship when the parent's relationship with another child has been terminated for a violation of predicate grounds (D) or (E)). Therefore, we will provide a detailed analysis for these grounds even when in the *Anders* context. *See In re E.K.*, 608 S.W.3d 815, 815 (Tex. 2020) (Green, J., concurring in denial of petition for review).

**Analysis**

**Father's Appeal**

Father challenges the sufficiency of the evidence supporting the trial court's findings of predicate grounds (E), (O), and (P). Ground (E) is satisfied by proof that the

parent engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(E).[11] The cause of the danger to the child must be the parent's conduct and/or failure to act. *In re M.J.M.L.*, 31 S.W.3d 347, 350–51 (Tex. App.—San Antonio 2000, pet. denied); *Doyle v. Tex. Dep't of Protective & Regulatory Servs.*, 16 S.W.3d 390, 395 (Tex. App.—El Paso 2000, pet denied). It is not necessary that the conduct be directed at the child, nor must actual harm result. *Dupree v. Tex. Dep't of Protective & Regulatory Servs*., 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ). The specific danger to the child's well-being need not be established as an independent proposition but may be inferred from parental misconduct. *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.—El Paso 2015, no pet.).

Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment. *In re R.S.-T*, 522 S.W.3d 92, 110 (Tex. App.—San Antonio 2017, no pet.). Courts may also consider evidence of a volatile and chaotic marriage and repeated reconciliation with an abusive spouse. *Id.* (citing *Sylvia M. v. Dall. Cty. Child Welfare Unit*, 771 S.W.2d 198, 201, 204 (Tex. App.—Dallas 1989, no writ)).

Here, the Department first became involved in May 2020 after Father was arrested and later pled guilty to domestic violence by impeding Mother's breathing and/or circulation. Evidence shows Father repeatedly violated the conditions of his probation and the FBSS plan to have no contact with Mother. In June 2021, A.M.T. was removed due to Father's continued drug use, his inability to control his anger, his continued

---

[11] "Endangerment means to expose to loss or injury, to jeopardize." *In re J.W.*, 645 S.W.3d 726, 749 (Tex. 2022) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)).

presence in the home, and in eight months, neither parent had completed any services in their plan. Shortly thereafter, D.M. was removed when he and Mother tested positive for methamphetamine. Father admitted to the Department and at trial that he used illegal drugs, including during Mother's pregnancy with D.M., and less than a week before final hearing.

Father also failed to complete the Batterer Intervention Program, failed to appear for numerous drug screens without explanation, and failed to complete the other services intended to protect the children. The trial court had the opportunity to consider, and reject, Father's proffered reasons for his lack of compliance. *In re S.P.M.*, No. 07-13-00282-CV, 2014 Tex. App. LEXIS 614, at *11–13 (Tex. App.—Amarillo Jan. 21, 2014, no pet.) (mem. op.) (citing *In re J.F.C.*, 96 S.W.3d at 266. Based on a review of the direct and circumstantial evidence contained in the record, we conclude that legally and factually sufficient evidence supports the trial court's findings that Father engaged in conduct which endangered the children's physical or emotional well-being, satisfying subsection (E). It is unnecessary to consider Father's challenges to predicate grounds (O) and (P) in light of the evidence supporting termination under subsection (E). *See* TEX. R. APP. P. 47.1. *See also In re J.F.-G*, 627 S.W.3d at 321.

Regarding the trial court's determination that termination of Father's parental rights is in the best interest of the children, we consider the factors itemized in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[12] Although the Holley list "is by no means

---

[12] The *Holley* factors are: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent

exhaustive, [it] does indicate a number of considerations which either have been or would appear to be pertinent." *Id.* at 372.[13] Many of the reasons supporting termination under subsection (E) will also support the trial court's best interest finding. *See In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (same evidence may be probative of both section 161.001(b)(1) grounds and best interest). "A parent's drug use, inability to provide a stable home, and failure to comply with a family service plan supports a finding that terminations is in the best interest of the child." *In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.).

Whether viewed in the light most favorable to the district court's order (legal sufficiency) or in a neutral light (factual sufficiency), the evidence demonstrates remarkable instability in Father's life and his inability to provide a safe, drug-free environment at home. The evidence shows Father's children were initially removed due to his continued drug use, an inability to control his anger, and his failure to complete any services. Father continued to use methamphetamine up until days before the final hearing, failed to complete counseling, failed to identify any plan or services that might assist him in creating a stable home environment, and failed to identify a residence or provide any evidence of employment or income.

The evidence shows that the children, on the other hand, have been placed together in a foster home and are doing well. There is a potential for adoption. The children's present home is stable and drug-free. We conclude that legally and factually

---

which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371–72.

[13] *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).

sufficient evidence supports the trial court's best-interest finding.

**Mother's Appeal**

Mother's appointed counsel has filed a motion to withdraw, together with an *Anders*[14] brief in support. In the latter, counsel certified that she diligently searched the record and concluded that the appeal was without merit. Appellate counsel also filed a copy of a letter sent to Mother informing her of her right to file a pro se response. According to counsel's letter, Mother was also provided a copy of the appellate record. By letter, this Court also notified Mother of her right to file a pro se response to counsel's brief. The deadline assigned has lapsed with no response being filed.

In compliance with the principles enunciated in *Anders*, appellate counsel discussed two potential areas for appeal involving 1) the sufficiency of evidence to support termination under section 161.001(b)(1), and 2) whether termination of her parental rights was in the children's best interest. Upon discussing the potential areas of appeal, counsel concluded that none provided arguable issues.

We too independently reviewed the appellate record in search of arguable issues for appeal. *See In re E.J.H.*, No. 07-22-00074-CV, 2022 Tex. App. LEXIS 4465, at *3 (Tex. App.—Amarillo June 29, 2022, no pet.). With regard to the trial court's findings supporting predicate ground (E), the evidence shows that during her pregnancy with D.M. (and while A.M.T. resided with her), Mother was physically assaulted by Father. Despite this act of domestic violence in the home, and in the face of a service plan that prohibited

---

[14] *See Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

her from being in contact with Father, Mother persistently was found in Father's presence and attempted to minimize his responsibility. Moreover, Mother used methamphetamine while pregnant, causing D.M. to test positive for the illegal substance at birth.

Even after proceedings were brought to terminate her parental rights, Mother failed to complete the service plans or to show up for scheduled drug screens.[15] When the trial court gave Mother the choice to show a negative drug screen as a condition for seeing her children, Mother failed to present for drug testing. Mother also moved without informing her caseworker of her new address and, at the final hearing, had not revealed where she was living. Mother also admitted she had used methamphetamine two to three months before final hearing.

As shown above, the evidence demonstrates a stable and safe home environment for the children in their current foster home placement. Based on the evidence presented at trial, we find no arguable issues that would support reversal of the judgments on appeal.

## Conclusion

The trial court's judgments are affirmed.[16]

Lawrence M. Doss
Justice

---

[15] *See In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Houston [14th] 2003, no pet.) (noting that a factfinder may infer from a parent's repeated failure to show for drug screens that the parent is avoiding testing due to drug use).

[16] We take no action on Mother's counsel's motion to withdraw from representation and call counsel's attention to the continuing duty of representation through the exhaustion of proceedings, which may include filing a petition for review in the Supreme Court of Texas. *See In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016) (per curiam).